ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Appellant,

v.

John BJORNSON, Appellee.

No. 12–90–00274–CV.

Court of Appeals of Texas,
Tyler.

April 24, 1992.

Cary D. Kirby, Lufkin, for appellant.

Roland G. Brown, Jacksonville, for appellee.

GERALD T. BISSETT, Retired Justice.[1]

This is an appeal by St. Paul Fire & Marine Insurance Company, defendant in the trial court, from a judgment rendered in a worker's compensation case filed by the Appellee, John Bjornson, against St. Paul Fire & Marine Insurance Company, who issued a worker's compensation insurance policy for Appellee's benefit as a worker and employee of Red T. Coil. Appellee, by this suit, alleged injury during the course of his employment at Red T. Coil, and sought worker's compensation benefits for the incapacity allegedly caused by this injury under the policy of insurance issued by Appellant and pursuant to Texas worker's compensation law. A trial was held in the District Court of Cherokee County and the jury returned the verdict finding that Appellee was injured on May 8, 1989, in the course of his employment, and that such injury produced total incapacity from said date until July 24, 1989, and partial incapacity from July 25, 1989, until July 25, 1993. Appellee filed a Motion for Judgment on the Verdict, and Judgment was, thereafter, entered upon the verdict of the jury.

Appellant, has timely perfected an appeal from the judgment.

Appellant, pleaded, by way of an affirmative defense to Appellee's suit for worker's compensation benefits, that Appellee was released to return to work by one or more of his physicians and that Appellee, thereafter, refused, without justification, to accept employment provided by his former employer, Red T. Coil, which employment was reasonably suited to Appellee's incapacity and physical condition at the time he was released to return to work. In accordance with this pleading, this affirmative defense was submitted to the jury in questions 7 and 8, and the jury answered these questions in Appellant's favor with a finding that Appellee did, in fact, unjustifiably refuse employment, reasonably suited to his incapacity and physical condition, that had been secured for him in the locality where he was injured and that such unjustifiable refusal began on July 24, 1989, and ended on June 27, 1990. Notwithstanding these findings, the trial court thereafter, entered a judgment on the jury's verdict, which included an award of partial incapacity benefits during the period of unjustified refusal found by the jury in response to questions 7 and 8.

Appellant contends in his first point of error:

> The District Court of Cherokee County erred in entering a judgment whereby the court presumably disregarded the jury answers to question 7 and 8 that the plaintiff, John Bjornson, unjustifiably refused employment that had been secured for him in the locality where he was injured and that was reasonably suited to his incapacity and physical condition.

The Texas Legislature, in enacting the Worker's Compensation Act, was concerned with expediting the "settlement of meritorious claims" by injured Texas workers and employees. *Stott v. Texas Employers Ins. Assoc.*, 645 S.W.2d 778, 780 (Tex.1983). Since this purpose was to facilitate the settlement of "meritorious claims" only, the legislature saw fit to include the Article 8306, § 12a (Vernon 1967) in the Act, reading, as follows:

> If the injured employee refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where injured or at a place agreeable to him, he shall not be entitled

---

1. The panel before whom this cause was submitted consisted of T.C. Chadick, retired chief justice, Court of Appeals, Sixth District of Texas at Texarkana. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

to compensation during the period of such refusal, unless in opinion of the Board such refusal is justifiable.

Appellant, specifically plead this section of the statute as an affirmative defense and submitted this defense to the jury in questions number 7 and 8. The jury, as above noted, returned a finding of an unjustified refusal to return to work for approximately a one year period of time. However, as further noted above, and notwithstanding the jury answers to questions 7 and 8 and the general principal that the judgment of the court must conform to the verdict as a whole, the court's judgment on the verdict awarded partial incapacity benefits during the period in which the jury found an unjustified refusal to return to employment.

Appellee did not request the trial court in his motion for judgment to disregard the jury's answers to questions 7 and 8. He simply asked that upon hearing of his motion that "judgment be entered in the form attached hereto as Exhibit 'A'." This record does not contain the abovementioned exhibit.

The judgment ordered (in relevant part) that the Appellee recover of and from Appellant (the insurance carrier), the following amounts of money: 1) "$2,388.65, baring the total accrued compensation through June 27, 1990, of $4,009.33 (including interest of 4% compounded annually) less credit for weekly compensation payments previously made by carrier in the amount of $1,615.24"; 2) "$550.00, being the reasonable costs expended or incurred by John Bjornson for seasonally required health care as a result of the injury which St. Paul Fire & Marine Insurance Company failed to pay within a reasonable time"; 3) "$7,280.80 representing the total of 160 weeks of future compensation beginning June 27, 1990, said sum to be paid as follows: (a) $1,841.14, the discounted attorney's fee ... (b) $5,685.00 to be paid to worker in equal weekly installments of $36.66 each, payable weekly beginning on the 4th day of July, 1990, and continuously regularly thereafter on each successive 7th day until the said sum has been fully paid."

The judgment further ordered that the above sum of money shall bear interest at the rate of 10% per annum from and after the due date of each such respective installments until fully paid.

Appellee contends that the trial court did not err in rendering judgment that he recover partial disability benefits because the jury finding "of partial incapacity and the finding of unjustifiable refusal of employment can be, and apparently were, harmonized by the court in a manner consistent with the judgment entered." In that respect in addition to the answers, by the jury to questions 7 and 8, the answers to questions 4, 4A and 4B, found that the Appellee's injury was a producing cause of partial incapacity; that the beginning date of partial incapacity was July 25, 1989, and would end on July 25, 1993. He argues that the trial court apparently found that while the (Appellee) could have returned to work at employment "reasonably suited to his incapacity and physical condition," "his incapacity and physical condition would have resulted in lost earning capacity." He reasons that such comports with TEX. R.CIV.P. 301, which provides in part:

> The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so found as to give the party all the relief to which he may be entitled, either in law or in equity.

He further reasons that such a construction of the court's disregarding the jury's answer to questions 8 and 9 comports with the holding of *Teas v. Republic National Bank of Dallas*, 460 S.W.2d 233 (Tex.Civ. App.—Dallas 1970, writ ref'd n.r.e.). Therefore, he argues that "it should be presumed that the court followed the law and based its judgment on the verdict as a whole."

There being nothing in the judgment entered on the verdict or the Motion to Enter judgment on the Verdict to explain this award of worker's compensation benefits during this period of refusal and there being no Motion for Judgment Non Obstante Veredicto or Motion to Disregard Jury Findings, presumably the court, on its own

initiative, simply disregarded the jury's answers to questions 7 and 8.

 Litigants are entitled to have material, disputed, fact issues determined by a jury. *Reed v. Enright*, 488 S.W.2d 596, 598 (Tex.Civ.App.—Dallas 1972, no writ). Consequently, a trial judge may not, ordinarily, simply disregard, on its own initiative or motion, a jury finding and/or render a judgment non obstante veredicto on its own initiative or motion. *Id.* at 598; *Orkin Exterminating Co., Inc. v. Lesassier*, 688 S.W.2d 651, 653 (Tex.Civ.App.—Beaumont 1985, no writ); *Dewberry v. McBride*, 634 S.W.2d 53, 55 (Tex.Civ.App.—Beaumont 1982, no writ). In fact, and to the contrary, not only must there be a written motion and reasonable notice for a trial court to disregard a jury finding and/or render a judgment non obstante veredicto, the written motion to disregard a jury finding "must be directed to the objectionable issue or issues and point out the reasons why such issues should be disregarded." *Id.* at 55.

Appellant also relies upon the above-quoted part of Rule 301 relied upon by Appellee. However, it is also pointed out by Appellant that the remaining part of Rule 301, reading:

[P]rovided, that *upon motion and reasonable notice* the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the Court may, *upon like motion and notice*, disregard any jury finding on a question that has no support in the evidence. (Emphasis added), should be considered.

 Rule 301, in its entirety is considered by us in disposing of the point of error under consideration. As noted, Appellee did not file a motion to disregard the findings by the jury in response to questions 7 and 8. Therefore, in the absence of such motions, and where the trial court, *sua sponte*, disregards jury findings, as is the case here, and despite the condition, argument and reasoning of Appellee, such action can be upheld only where the disregarded findings are in regard to immaterial issues. *C & R Transport, Inc. v.*

*Campbell*, 406 S.W.2d 191, 194 (Tex.1966); *Arch Construction, Inc. v. Tyburec*, 730 S.W.2d 47, 51 (Tex.Civ.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). A special issue or question is immaterial only when "(1) it should not have been submitted; or (2) though properly submitted, it has been rendered immaterial by other findings, ..." *C & R Transport, Inc.*, 406 S.W.2d at 194. Questions 7 and 8 in this case, dealing with Appellant's affirmative defense of unjustifiable refusal to accept suitable employment at the location of injury and the duration of such refusal, involve a material issue. These questions were not rendered immaterial by other findings and there is no basis upon which they should not have been submitted; the defense having been properly plead and, as demonstrated below, legal evidence of each element having been introduced. Therefore, although this exception for immaterial issues does exist, it is not applicable in this case. Consequently, there being no appropriate motion for a judgment non obstante veredicto or to disregard jury findings numbers 7 and 8, the trial court's action of disregarding these findings in rendering its judgment on the verdict is clearly erroneous.

 Moreover, for a court to disregard a jury finding absent immaterial issues and render a judgment non obstante veredicto, the court must have determined that "no evidence" existed to support the jury finding. *Campbell v. Northwestern National Life Ins. Co.*, 573 S.W.2d 496, 497 (Tex. 1978). In addition to the requirements of Rule 301 of the Texas Rules of Civil Procedure, "... the Court may, upon ... *motion and notice, disregard* any jury finding on a question that has *no support* in the evidence." (emphasis added). Furthermore, as the Texas Supreme Court observed in the case of *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 594 (1986), *cert. denied*, —— U.S. ——, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990), at trial court, under Rule 301, which requires a finding of "no support in the evidence" or no legal evidence, may not disregard a jury's answer just because it is against the great weight

and preponderance of the evidence and, in such a situation, the trial court may only grant a new trial.

There is some evidence in the case at bar that Appellant met all of the requirements contained in Article 8306, § 12a, the existence of which created a fact issue appropriate for determination by the jury and which, thus, prohibits the trial court, regardless of whether the question is immaterial, from disregarding the same on its own initiative and entering a judgment to the contrary. To begin with, the existence of evidence that Appellee, as an employee of Red T. Coil, was injured is not disputed. However, there is compelling evidence derived from the testimony of Dr. Loren Fleckenstein, a neurosurgeon, and one of the treating physicians of Appellee, that Appellee, at the time of his initial exam, was suffering from a lumbo-sacral strain or muscle strain in his back. Evidence that employment was procured for Appellee, the injured employee, in the locality where he was injured, is also contained in the record. Gary Lee Montes, Supervisor at Red T. Coil, testified that, at the time Appellee was being treated and released by Dr. Loren Fleckenstein, there were, in fact, positions available at Red T. Coil for Appellee, should Appellee have desired to return. Mr. Montes further testified that there was not just one job available to Appellee, should he have decided to return, but that there were at least nine different jobs at which he could have potentially been reemployed. Furthermore, Mr. Robert Boucher, Jr., Personnel Manager for Red T. Coil, who had input in the hiring and firing of employees at Red T. Coil, as well as input in working with employees with injuries who have been released to return to work with modified light duties, testified that Red T. Coil would have worked with Appellee to return him to work, in accordance with his modified light duties, as set forth by the doctor, and that such modified work was available at the time of his release.

There is also evidence in the record that employment available for the injured Appellee was reasonably suited to his incapacity and physical condition is well established in the record. Dr. Fleckenstein, testified that he released Appellee to return to a "light duty work schedule" initially, and defined this light duty by limiting his lifting to 25–30 pounds and limiting the amount of bending and stooping required of him. There is evidence that there were at least nine specific job openings available to Appellee which fell within the limitations imposed by Dr. Fleckenstein. Mr. Boucher confirmed previous testimony that the jobs described above fell well within the restrictions of no weight lifting greater than 25–30 pounds, and no repetitive bending, stooping, or climbing.

There is evidence that Appellee refused that light duty employment offered by Red T. Coil. Dr. Fleckenstein further testified that when he discussed his recommendations that Appellee return to work under the limitations suggested that "he refused to do this ... that he didn't want to go back to work and refused to go back to work."

There is also evidence that Appellee's refusal to go back to work at Red T. Coil was not justifiable. Dr. Fleckenstein testified that after running numerous and varied tests on Appellee, it was his opinion that he should have been able to at least perform the usual tasks of a worker that can get and keep employment suitable to his condition, and that, consequently, he should have been able to return to work with the limitations he imposed thereon. In fact, as indicated numerous times, Dr. Fleckenstein actually released Appellee to return to light duty work. Furthermore, and as has also been set out, both Mr. Montes and Mr. Boucher testified that, while jobs were available at this location meeting the limitations placed on Appellee by Dr. Fleckenstein, Appellee never once inquired or ever once made any effort whatsoever to attempt to return to light duty work for even one single day. Since Dr. Fleckenstein testified that he could locate nothing to explain Appellee's continuing complaints, his failure and refusal to attempt to return to light duty work was obviously evidence by which the jury could

determine that such refusal was unjustifiable.

The language used in Article 8306, § 12a, quoted above, makes it clear that, when the injured employee refuses employment reasonably suited to his incapacity and physical condition available to him as provided by the statute, absent an opinion by the Industrial Accident Board that such refusal was justified, he is not entitled to worker's compensation during the point of refusal. There is no such opinion in the record before us; consequently, under the evidence addressed, Appellee is not entitled to worker's compensation benefits. *See Utica Mutual Ins., Co. v. Jacobs*, 483 S.W.2d 500, 506 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ), where it was held that his section is "a matter constituting an avoidance or affirmative defense."

The judicial rules of statutory construction also support Appellant's position. The Texas Supreme Court has recognized that, in construing the worker's compensation statutes, "[t]he intention of the legislature in enacting the statute must be ascertained from the language of the statute itself." *Second Injury Fund v. Keaton*, 162 Tex. 250, 345 S.W.2d 711, 714 (1961). *See also, Argonaut Southwest Ins. Co. v. Morris*, 420 S.W.2d 760 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.) (holding that worker's compensation law is purely statutory and the Court's duty is to enforce the act as written). Once the intention of the statute has been ascertained from the language of the statute itself, it is the Court's duty to enforce such intent. *Second Injury Fund v. Keaton*, 345 S.W.2d at 714. Furthermore, while it is recognized that the worker's compensation act should be liberally construed in favor of the injured claimant, the Courts are not at liberty to adopt a construction which is contrary to the plain and unambiguous language of the statute. *Brantley Ins. Co. v. Phoenix Ins. Co.*, 536 S.W.2d 72, 74 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd).

The application of these rules of construction to the clear language of the statute leaves little room to question that the legislature meant what it wrote, and thus, intended the statute to be an affirmative defense to the payment of worker's compensation benefits. Worker's Compensation law was enacted specifically to compensate an injured employee for "loss of earning capacity." *Hotchkiss v. Texas Employers' Ins. Assoc.*, 479 S.W.2d 336, 339–40 (Tex.Civ.App.—Amarillo 1972, no writ); *Commercial Standard Ins. Co. v. Shank*, 140 S.W.2d 273, 275 (Tex.Civ. App.—Austin 1940, writ dism'd judgmt cor.); and, as previously stated, the purpose of the Act is to expedite the "settlement of meritorious claims" for such loss of earning capacity. *Stott v. Texas Employers Ins. Assoc.*, 645 S.W.2d 778, 780 (Tex.1983). Hence, the legislature, in accordance with this policy of awarding only meritorious claims, obviously enacted the affirmative defense contained in Section 12a of the statute to prevent an injured worker from obtaining worker's compensation benefits for a nonmeritorious claim for lost earning capacity he has not actually lost but is simply refusing to employ.

We conclude, and so hold, that there was ample evidence of probative value to support each element of the affirmative defense pleaded by Appellant. It was reversible error for the trial court to disregard the jury's findings in response to questions 7 and 8. The judgment cannot be affirmed on the basis of the theories advanced by Appellee. Appellant's first point of error is sustained.

Since the judgment of the trial court will be reversed it is not necessary that we consider Appellant's second point of error.

Appellee contends in his third and fourth counter points that the trial court did not err in rendering the judgment now on appeal because: 1) "Article 8306, § 12a of the Texas Revised Civil Statutes violates the equal rights clause of the constitution of the State of Texas"; and "that Article 8306, § 12a of the Texas Revised Civil Statutes, if applied to plaintiff, John Bjornson, would constitute a deprivation of John Bjornson's liberty, property or privilege interests without due cause of the law of the land in violation of the constitution of the State of Texas."

Appellee did not object to the submission of Appellant's affirmative defense to the action brought by him on the grounds of unconstitutionality of the statute. He raises the issue of unconstitutionality for the first time on appeal. He has failed to preserve these complaints for appellate review. *Wright v. State,* 776 S.W.2d 763, 766-67 (Tex.App.—Corpus Christi 1989, pet. ref'd); *Elbar, Inc. v. Claussen,* 774 S.W.2d 45, 53 (Tex.App.—Dallas 1989, writ denied). Appellee is barred by law from raising these allegations for the first time on appeal of this case. Tex.R.App.P. 52(a) states specifically:

> In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

The judgment of the trial court is reversed and set aside to the extent it awarded John Bjornson worker's compensation benefits from July 24, 1989, until June 27, 1990, being the period of time in which the jury determined that John Bjornson unjustifiedly refused to return to work. Judgment is rendered that John Bjornson, plaintiff in the trial court, take nothing as worker's compensation benefits for the period of time commencing July 24, 1989, and ending June 27, 1990. The cause is remanded to the trial court for the rendition and entry of a judgment which comports with this opinion.