**Richard Michael BLACKWELL and Linda Sue Blackwell, Legal Guardians of Richard Blackwell, II and Robert Bictor Blackwell, Appellants,**

v.

**HARRIS COUNTY, Texas, Appellee.**

**No. 14–94–00502–CV.**

Court of Appeals of Texas, Houston (14 Dist.).

Sept. 7, 1995.

Rehearing Overruled Oct. 12, 1995.

 

 
 
 
 
 

 
 
 
 
 

 
 
 
 
 
 

 
 
 
 
 
 

 
 
 
 
 

 
 
 

Lennon C. Wright, Houston, for appellants.

A.B. Crowther, Jr., Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## OPINION

HUDSON, Justice.

The survivors of Richard M. Blackwell ("the Blackwells") were awarded compensation by the Texas Workers' Compensation Commission. Harris County ("the County") challenged the award by its suit in county court. The court granted the County's motion for summary judgment, and the Blackwells appeal. We reverse the trial court's judgment and remand the cause for trial.

The summary judgment proof reflects Richard Blackwell was one of three or four Harris County deputies who were scheduled to escort a funeral procession in their "off-duty" hours. Deputy Blackwell was still en route to the funeral home when the procession departed. A short time after the procession's departure, Blackwell was fatally injured in a traffic accident. The County's motion for summary judgment was based on the well established rule that an individual traveling to and from work is not entitled to worker's compensation benefits for injuries accidentally received during such travel. *Evans v. Illinois Employers Insurance of Wausau,* 790 S.W.2d 302, 304 (Tex.1990). The County claimed Blackwell was not in the course and scope of his employment because the accident occurred while he was in transit to the procession. The trial court agreed and rendered summary judgment in favor of the County.

The Blackwells claim Deputy Blackwell caught up with the procession and was actively directing traffic when the accident occurred. Because the facts are in dispute, the Blackwells contend the trial court erred in granting the County's motion for summary judgment.

To sustain a summary judgment there can be no material fact issue, and the movant must establish his burden as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex. 1985). Evidence favorable to the nonmovant will be taken as true when deciding whether there is a disputed fact issue that precludes summary judgment. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

In response to the County's motion, the Blackwells submitted an excerpt from the video deposition of an eyewitness to the accident, Orval Ellis Downing, Jr. The excerpt reflects the following exchange:

A. (By Mr. Downing:) The policeman stopped at the intersection to stop traffic to let the funeral come by. The funeral goes by. He takes off with his sirens and his lights on. And I was watching him. And I looked back towards the next little intersection, and that's when the lady pulled out in front of him....

Q. (By counsel:) Mr. Downing, ... is there any doubt in your mind that the officer that was involved in the fatal traffic accident was also the same officer that you saw moments earlier directing a funeral procession?

A. No, sir, no doubt.

This testimony directly controverts the County's proof that Blackwell had not joined the procession at the time of the accident. A fact issue exists, therefore, regarding whether Deputy Blackwell was "escorting" the funeral procession when he was fatally injured.

In the alternative, the County contends that because Blackwell's regular duty assignment with the Harris County Sheriff's Office was as a correctional officer in the Harris County Detention Center, it is immaterial whether he had joined the procession because his funeral escort duties were outside the course and scope of his employment in any event. The County bolsters its argument by noting that Blackwell received permission from the sheriff's office to escort funerals in his off hours, but the sheriff's office did not direct, control, or supervise him in these activities.

■ Before an injury may be classified as one sustained in the course of employment it must meet two tests: (1) it must be of a kind or character originating in or having to do with the employer's work; and (2) it must have occurred while the individual was engaged in the furtherance of the employer's business or affairs. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 627 (Tex.1981); *Dickson v. Silva*, 880 S.W.2d 785, 787 (Tex. App.—Houston [1st Dist.] 1993, no writ). The statute in effect at the time of Blackwell's death, provided that an injury in the course of employment includes:

(4) ... all other injuries of every kind and character having to do with and originating in the work, business or trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.

Act of March 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex.Gen.Laws 269, 292, *repealed by* Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(15), 1989 Tex.Gen.Laws 114 (current version at Tex.Labor Code Ann. § 401.011(12) (Vernon 1995)).

■ State law requires strict adherence to traffic control signals unless otherwise directed by a police officer. Tex.Rev.Civ. Stat.Ann. art. 6701d, § 32(a) (Vernon 1977). To maintain the cohesive integrity of a motorcade in an urban environment, its members must often proceed in opposition to traffic control devices. This is not possible without a police escort. A police officer who escorts a motorcade performs a valuable law enforcement function. This escort activity is of a kind and character having to do with his employment as a police officer. *See Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 226 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.) (stating traffic regulation is a governmental function and that police officers have the authority to direct traffic). If Deputy Blackwell had been *assigned* the duty of escorting the funeral procession, such task would undoubtedly have been within the course and scope of his employment as a Harris County deputy sheriff. We must determine, however, whether this activity, when performed off-duty, warrants the same protective benefits enjoyed by officers injured on-duty.

■ A police officer is an agent of government. All of his power and authority are derived from the governmental entity that employs him. Unless elected to a law enforcement office, a peace officer must hold a license from the Texas Commission on Law Enforcement Standards certifying his qualifications, and be commissioned by a governmental agency named in Article 2.12 of the Code of Criminal Procedure. *See* Tex.Gov't Code Ann. § 415.051–.052 (Vernon 1990) (describing licensing requirements for persons seeking occupation of peace officer).

██ Additionally, "it is the duty of every peace officer to preserve the peace within his jurisdiction." TEX.CODE CRIM.PROC.ANN. art. 2.13 (Vernon 1977). Whenever a peace officer observes a "person is about to commit an offense against the person or property of another ... it is his duty to prevent it." TEX.CODE CRIM.PROC.ANN. art. 6.06 (Vernon Supp.1995). Peace officers are not relieved of this responsibility simply because they are "off-duty." *Moore v. State,* 562 S.W.2d 484, 486 (Tex.Crim.App.1978).

██ Not every injury sustained by a police officer necessarily occurs within the course and scope of his employment. Like other citizens, police officers may be injured in accidents unconnected with their service as law enforcement officers. However, because they retain their status as peace officers twenty-four hours a day, making the distinction between compensable and non-compensable injuries may be more difficult than cases involving other citizens.

The Dallas Court of Appeals has rejected the notion that the statutory duties of a police officer may subject his governmental employer to workmen's compensation liability when he is off-duty. *Vernon v. City of Dallas,* 638 S.W.2d 5, 9 (Tex.App.—Dallas 1982, writ ref. n.r.e.). In *Vernon,* an off-duty Dallas police officer was dining with his wife in a restaurant in the City of Garland when he was attacked and injured by an unruly patron. The court of appeals affirmed the summary judgment in favor of the City of Dallas because the officer had no duty to quell a disturbance outside the city.[1] The court also stated that even if the officer had a duty to intervene and quell the disturbance, that duty "should not define 'course of employment' for purposes of determining whether an injured worker is entitled to worker's compensation." *Vernon,* 638 S.W.2d at 8. We disagree.

An officer's duty under the law is frequently, and sometimes the only, basis for determining when he is in the "course of employment." To adopt the Dallas court's reasoning is to disregard that a police officer may, while going about his private affairs, find

himself unexpectedly in the presence of brutal criminal activity. His intervention may protect a citizen from harm, but it will necessarily expose the officer to significant risk of injury. To hold that an officer should not expect to be compensated for injuries sustained by his attempts to enforce the law only encourages lawlessness. We are not persuaded by the rationale in *Vernon,* and we decline to follow it.

We find the standard for determining the status of police officers set forth by the Supreme Court of Virginia to be more persuasive. In *Glenmar Cinestate, Inc. v. Farrell,* 223 Va. 728, 292 S.E.2d 366 (1982), the court utilized a test that turns on one basic inquiry: in what capacity was the officer acting at the time he committed the acts for which the complaint is made?

> If he is engaged in the performance of a public duty such as the enforcement of general laws, his [private or temporary] employer incurs no vicarious responsibility for his acts, even though the employer directed him to perform the duty. On the other hand, if he was engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer, it becomes a jury question as to whether he was acting as a public officer or as an agent, servant of employer.

*Glenmar Cinestate, Inc.,* 292 S.E.2d at 369–70. We find this approach best balances the competing policy concerns bearing upon this issue.

██ If an officer is hired for the deterrent effect associated with his "visibility," and while walking around the premises he trips and falls, the activity leading to the injury is probably not within the course and scope of his employment as a law enforcement officer. *See Mount Sinai Hospital v. City of Miami Beach,* 523 So.2d 722, 724 (Fla.Dist.Ct.App.1988) (an off-duty police officer hired by a hospital to keep people from entering restricted areas was not in the course and scope of his employment as a peace officer when he tripped and fell in the

---

1. But *see Angel v. State,* 740 S.W.2d 727, 736 (Tex.Crim.App.1987) (municipal police officers have jurisdiction throughout the entire county or counties wherein the municipality is located.)

emergency parking area). However, if the officer observes criminal activity, his status changes from one of a private "ornament" to a public law enforcement officer. If the officer is then injured while attempting to enforce the law or apprehend a criminal suspect, he is acting within the course and scope of his employment as a law enforcement officer. The determination of whether an injury to a privately employed, off-duty peace officer was sustained while in the course and scope of his employment as a police officer is a fact issue which must be determined on a case-by-case basis.

■■■■ We have already determined that escorting a motorcade for the purpose of directing traffic is a law enforcement function. *See* TEX.REV.CIV.STAT.ANN. art. 6701d, § 23(a) (stating no person may willfully fail to comply with order or direction of police officer invested by law with authority to direct or control traffic). Further, the City of Houston requires all funeral processions to be accompanied by peace officers for the purpose of directing traffic.[2] HOUSTON, TEX. CODE OF ORDINANCES § 45–243 (1985). If Deputy Blackwell was in the course of directing traffic for the funeral procession, he did so as an agent of the County. The question of whether Blackwell had joined the funeral procession at the time of his injury is a material fact issue. Since the facts were in dispute in regard to this issue, summary judgment was not proper.

The judgment of the trial court is reversed and the cause remanded for trial.

2. Harris County argues that this statute was not included with appellant's proof in response to the County's motion for summary judgment and therefore is not part of the record before us. However, a court on its own may take judicial notice of enactments such as a municipal ordinance when the ordinance is in verified form, as in this case. TEX.R.CRIM.EVID. 204; *Fields v. City of Texas City*, 864 S.W.2d 66, 69 (Tex.App.— Houston [14th Dist.] 1993, no writ); *City of Houston v. Southwest Concrete Const., Inc.*, 835 S.W.2d 728, 733 n. 5 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Thus, we take judicial notice of the municipal ordinance requiring police escort for funeral processions.